THE NORTHERN COAL & DOCK COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE YOUGHIOGHENY & OHIO COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12746, 12747. Promulgated January 26, 1949.

*I. W. Sharp*, *Esq.*, for the petitioners.
*Clarence E. Price*, *Esq.*, for the respondent.

**OPINION.**

LeMire, *Judge*: The principal issue in this case is whether the petitioner incurred deductible losses in the fiscal year ended April 30, 1945, on the transfer of its assets to its parent company for credit on its current and funded indebtedness to the parent at amounts less than the agreed tax bases at which the properties were carried by petitioner.

The petitioner claims that the transfers amounted, in legal effect, to sales at less than cost basis to petitioner, adjusted for depreciation, on which the petitioner sustained deductible losses just as if it had sold the properties to a third party for cash.

Respondent claims that the transfers were transfers "in liquidation" of the petitioner to the parent corporation on which no loss can be recognized under the provisions of section 112 (b) (6) of the Internal Revenue Code.

Since the properties involved consist entirely of land and depreciable buildings and equipment, all used in the business of petitioner, the properties are not capital assets and any gain or loss resulting from their sale or exchange would be recognized as ordinary gain or loss.

Section 112 (b) (6) of the Internal Revenue Code provides that "No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation." That section then states certain qualifications which must be met to bring the transfer within this provision.

We are of the opinion that section 112 (b) (6) of the code does not apply to this case for the reason that it is applicable to the receipt of assets distributed in liquidation by a corporation and not to the transfer of them. This petitioner was the transferor of the assets involved and not the recipient thereof. Moreover, we are of the opinion that it does not apply for the reasons hereinafter discussed.

The respondent argues that the transfer of petitioner's assets to the Y & O for credit on its indebtedness was not an arm's length transaction amounting to an actual sale or exchange. He claims that it was only a step in the plan of both corporations to wind up the affairs of an unprofitable subsidiary and to consolidate it with the parent corporation in the hope that operating economies could be effected.

The evidence is that the petitioner was hopelessly insolvent and had long been in default on the payment of its debentures and its current

indebtedness to the Y & O. In view of the circumstances, it seems a reasonable course of action for the directors of the Y & O to have decided to discontinue the operations of petitioner.

The Y & O accepted the petitioner's inventories of coal at their book value, which consisted of the wholesale price paid to the Y & O, plus freight and handling cost. The respondent argues that the Y & O should have accepted the coal at a higher value than book value, stating that the coal could have been sold at a higher price than cost and that the profit from the sale of the coal would have at least partially made up the losses. However, the book value was the wholesale value of the coal in that amount at that time and place for the single wholesale disposition of the coal to a wholesaler of coal. The Y & O, itself a producer and wholesaler of coal, was not in the market for coal at a higher than wholesale price, which was the equivalent of the allowance given to the petitioner. The Y & O, as a creditor seeking to collect the amount due it from an insolvent debtor, could not be required to allow the debtor more for coal than either the debtor or the creditor would have to pay for it elsewhere. Petitioner, as an insolvent debtor, was in no position to bargain for a profit upon its wholesale price from its wholesaler creditor.

The respondent further argues that Y & O should have accepted the coal dock properties at petitioner's book value, instead of appraisal value, as it accepted the other assets of petitioner. We do not see that respondent has any grounds for complaint because these dock properties were transferred at appraisal, rather than at book value. The evidence is that the appraisal fairly represented the market value of the properties at the time of the transfer to the Y & O.

We find no basis in the evidence for any doubt that the indebtedness of petitioner to the Y & O was genuine, nor is there any basis for doubt that the allowances made for all of the assets transferred were reasonable and represented their fair market value.

Respondent's principal argument is that section 112 (b) (6) of the Internal Revenue Code controls this case. He argues that for all intents and purposes the transaction here involved amounted to a winding up of the petitioner as a corporate entity and a complete liquidation within the meaning of section 112 (b) (6). The transaction did leave the petitioner with no assets, no income, and no business. For all practical purposes the petitioner was liquidated. The facts that the Y & O continued to hold the stock of the petitioner without formal cancellation and that there was no formal dissolution of petitioner as a corporation are not obstacles to the transfer being a distribution in liquidation. *Frelmort Realty Corporation*, 29 B. T. A. 181; *Wilmington Steamboat Co.* v. *Sturgess*, 52 Fed. (2d) 210; affd., 55 Fed. (2d) 831; *Commissioner* v. *Court Holding Co.*, 324 U. S. 331.

Section 112 (a) of the code states the general rule for recognition of gain or loss when it provides that upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized except as thereinafter provided in the section. The exception in section 112 (b) (6), which respondent is attempting to apply here, is effective only "upon the receipt by a corporation of property *distributed in complete liquidation* of another corporation" (emphasis supplied), provided that certain other qualifications are satisfied.

Assuming that the respondent is correct in his argument that this transaction amounted in final effect to a liquidation of the petitioner, it is still necessary to decide whether the transfer of assets to the Y & O was a "distribution in liquidation," such as is meant by section 112 (b) 6.

The term "distribution in liquidation" has been defined by the courts as a distribution of assets to stockholders in cancellation and redemption of the stock; that is, a return to them in whole or in part of their capital investment in the corporation. A distribution made to a creditor against an indebtedness does not come within the statute. *H. G. Hill Stores, Inc.*, 44 B. T. A. 1182; *Glenmore Distilleries Co.*, 47 B. T. A. 213; *B. F. Sturtevant Co.*, 47 B. T. A. 464; *Iron Fireman Manufacturing Co.*, 5 T. C. 452; *Houston Natural Gas Corporation*, 9 T. C. 570. We said in the *Houston Natural Gas Corporation* case, *supra*, that:

\* \* \* a subsidiary's transfer of all assets to a creditor parent is first applicable to a discharge of its indebtedness to the parent, and it [the principle of the cited decisions] operates with equal force to require the recognition of any gain realized by the parent from a full collection of such indebtedness. It is the excess of the assets' value above indebtedness that constitutes a liquidating distribution \* \* \*

All of petitioner's assets were consumed by the indebtedness against which they were applied, leaving nothing for the Y & O to receive as a distribution on its stock.

If here there had been a liquidating distribution of petitioner's assets to the Y & O, we would have a situation like that in *J. T. S. Brown's Son Co.*, 10 T. C. 840, where we held that under the provisions of section 29.22 (a)–20, Regulations 111, no gain resulted to the distributor. However, as pointed out above, we are not dealing here with a liquidating distribution, but with a transfer of assets in satisfaction of an indebtedness.

We conclude that the petitioner realized deductible losses on the transfer of its assets to the Y & O in the amounts claimed.

The determination of this issue controls the other issues in this case.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*