**COASTAL TERMINALS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 7562.**

United States District Court
E. D. South Carolina,
Charleston Division.

Aug. 23, 1962.

Arthur G. Howe, G. M. Howe, Jr., George E. Grimball, Jr., Charleston, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Edward S. Smith, John F. Murray, Leon W. Vaseliades, Attys., Dept. of Justice, for defendant.

WYCHE, Chief Judge.

This suit was instituted by the plaintiff taxpayer to recover refund of taxes which it alleges the District Director of Internal Revenue erroneously assessed against it in holding that certain of its properties were sold on June 30, 1957, for $1,200,000.00 to Delhi-Taylor Oil Corporation.

The issue is whether the transfer by plaintiff of certain of its properties to Delhi-Taylor Oil Corporation for certain properties transferred by it to plaintiff was a sale resulting in a taxable gain, a non-taxable exchange within the meaning of Section 1031(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1031(a), or a partial taxable exchange within the meaning of Section 1031(b) of the Internal Revenue Code of 1954.

Plaintiff is a corporation which was formed by and designed to serve a group of independent oil jobbers. It performed its function by owning and providing facilities for the storage of petroleum products. In this connection it owned and operated a deep water terminal in North Charleston, South Carolina. This terminal was ultimately transferred to Delhi-Taylor Oil Corporation and it is this transfer which constitutes the subject matter of this action.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

## FINDINGS OF FACT

1. Years prior to the transfer there became available to plaintiff's stockholders and jobbers in the interior an inland source of oil supply on what was called the plantation pipe line. Plaintiff, taking into consideration the cost of transporting oil from Charleston, to the interior, commenced investigating the possibility of acquiring terminal sites along this pipe line and as a result acquired options at Doraville, Georgia; Belton, South Carolina, and Salisbury, North Carolina. While investigating the feasibility of developing these sites plaintiff found that steel with which storage tanks could be built was in short supply and was able to obtain commitments from a steel concern so that the same would be available in the event plaintiff found actual need for the same. There existed at this time an operating terminal at Wilmington, North Carolina, which was owned by Coastal Terminals of North Carolina, a separate and distinct corporation of which plaintiff owned sixty (60%) per cent. of the stock, but which plaintiff hoped in the future to acquire and own outright. Plaintiff lacked the capital to purchase and develop these sites, and the obtaining of options and the other things done in connection therewith, at this time constituted no more than investigation and future corporate planning.

2. With this background, and years later, Delhi-Taylor Oil Corporation contacted plaintiff and expressed an interest in acquiring plaintiff's deep water terminal at North Charleston. After a few days of negotiations, the parties concluded that they could not agree upon a sale. Instead, on May 11, 1957, they entered into an alternative agreement under which they agreed Delhi-Taylor Oil Corporation would acquire the terminal in Wilmington, North Carolina, the sites at Belton, South Carolina; Salisbury, North Carolina, Charlotte, North Carolina, (Doraville, Georgia, later being substituted for Charlotte); improve the same and exchange them with plaintiff for its terminal in Charleston. Thereafter, Delhi-Taylor Oil Corporation acquired and improved these properties, and on July 1, 1957, exchanged them with plaintiff for its terminal in Charleston. Plaintiff's terminal in Charleston consist-

ed of real estate, pipe lines and storage tanks. The four tracts it acquired from Delhi-Taylor Oil Corporation were of like kind, and after receiving them, plaintiff continued in the same business in which it had been engaged, utilizing the four properties for the same purpose for which it had formerly used the single property in North Charleston.

3. Contrary to the Government's contention that the true nature of the transaction was that plaintiff sold to Delhi-Taylor, and that Delhi-Taylor thereafter acted as a mere momentary conduit through whom plaintiff purchased property and passed title and who assumed and liquidated liabilities incurred by plaintiff for the construction of terminals, the evidence compels but the one conclusion that the parties from the inception intended an exchange; that the improvements made by Delhi-Taylor such as the construction of tanks and pipe lines were done by and on behalf of Delhi-Taylor so as to put it in a position to accomplish an exchange; and that an exchange of like properties in fact and in law took place.

4. The substance of the transaction was one in which plaintiff owned a deep water terminal which Delhi-Taylor Oil Corporation wanted to acquire; they were unable to agree upon a sale; that as a result of prior corporate investigation and planning, which at the time had no connection with this transaction, plaintiff knew of certain property which it would be willing to accept in exchange for its terminal provided Delhi-Taylor Oil Corporation would acquire and improve the same, and that Delhi-Taylor did acquire and improve the same on its own behalf so that it would be in a position to make an exchange, and that an exchange in fact took place. Plaintiff did not "cash in" and invest the same in another business nor did it receive cash and reinvest the same in like property, but merely exchanged its property with Delhi-Taylor Oil Corporation for like property and continued on as before in its identical business.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter of this action.

2. Section 1002 of the Internal Revenue Code of 1954, provides that upon the sale or exchange of property the entire amount of the gain or loss shall be recognized except as otherwise provided.

3. Section 1031(a) of the Internal Revenue Code of 1954, provides: "No gain or loss shall be recognized if property held for productive use in trade or business or for investment * * * is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment."

4. The purpose of Section 1031(a) is to save the taxpayer from the immediate recognization of a gain, or to intermit the claim of a loss where as a result of the transaction there has been a mere change in the form of ownership and the taxpayer has not really cashed in on the theoretical gain or lost out on a losing venture. Portland Oil Co. v. Commissioner of Internal Revenue, (C.A. 1, 1940) 109 F.2d 479.

5. The realities or substance of the transaction and the intention of the parties govern, and the means employed by them to accomplish an exchange rather than a sale are unimportant. Comm'r. v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Hamlin's Trust v. Commissioner of Internal Revenue, (C.A. 10, 1954) 209 F.2d 761; Sarkes Tarzian, Inc. v. United States, (C.A. 7, 1957) 240 F.2d 467.

6. This transaction cannot be separated for tax purposes into its component parts. The actual intention of the parties and what was accomplished rather than the separate steps taken govern. Century Electric Co. v. Commissioner of Internal Revenue, (C.A. 8, 1951) 192 F.2d 155.

7. It was entirely proper and lawful for Delhi-Taylor Oil Corporation to bind itself to exchange property it did not own but could acquire in the

future. Howell Turpentine Co. v. Commissioner of Internal Revenue, (C.A. 5, 1947) 162 F.2d 319; W. D. Haden Co. v. Commissioner of Internal Revenue, (C.A. 5, 1948) 165 F.2d 588.

8. It is my opinion that the facts in this case compel the conclusion that the substance of the transaction clearly brings it within the provisions of Section 1031(a) of the Internal Revenue Code of 1954.

It has been conceded that in the event plaintiff prevails it would not be entitled to recover the full amount prayed for in the complaint and that the same would require adjustment. Therefore, plaintiff should have judgment against the defendant for the amount now determined by adjustment due it, together with interest thereon, to be calculated by the Treasury Department.

Accordingly, an appropriate order for judgment may be submitted.