Stanley E. KESS and Page Kess,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 71–1222.

United States Court of Appeals,
Sixth Circuit.

Dec. 7, 1971.

Wiley Dinsmore, Cincinnati, Ohio, for plaintiffs-appellants; Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, of counsel.

Richard Halberstein, Dept. of Justice, Tax Div., Washington, D. C., for appellee; Johnnie M. Walters, Asst. Atty. Gen., Gilbert E. Andrews, Thomas L. Stapleton, David English Carmack, Tax Div., Dept. of Justice, Washington, D. C., on brief; William W. Milligan, U. S. Atty., Norbert A. Nadel, First Asst. U. S. Atty., Cincinnati, Ohio, of counsel.

Before PHILLIPS, Chief Judge, and MILLER and KENT, Circuit Judges.

PHILLIPS, Chief Judge.

This is an appeal from the dismissal of an action for refund of income taxes imposed upon the proceeds of a life insurance policy. The sole question is whether the difference between the cost and proceeds of a life insurance contract, purchased by the insured at the same time as a single premium nonrefundable annuity contract in the manner described in this opinion, is income to the recipient of the life policy proceeds. We agree with District Judge Timothy S. Hogan that this question should be answered in the affirmative.

The insurance contract involved in this case was issued in December 1934 upon the life of Powell Crosley, Jr., who died March 28, 1961. The policy was

identical to other life policies issued by the company at that time. No evidence of insurability was required, however, and the policy would not have been issued without such evidence had not the annuity contract been purchased simultaneously. The total premium of $220,000, less expenses incident to issuance of the contracts, exceeded the $200,000 face amount of the policy. The life policy and annuity contract immediately were assigned irrevocably in accordance with a trust agreement.[1] The trustees made certain arrangements with respect to beneficiaries.

At the time of the death of Powell Crosley, Jr., his daughter, Mrs. Page Crosley Kess, was the sole beneficiary under the life policy. She exercised the settlement option of the policy and withdrew the proceeds of $203,372.

The District Director of Internal Revenue at Cincinnati, Ohio, assessed a deficiency against Mrs. Page Kess and her husband on their 1961 joint tax return for the tax on the difference between the policy cost and the proceeds.[2] In 1967, taxpayers paid the deficiency plus interest. Their administrative claim for refund was disallowed. This action was filed in District Court to secure a refund.

On cross-motions for summary judgment, the Government's motion was granted and the action was dismissed.

The District Court held that the proceeds of the policy were not exempt from inclusion in gross income by § 101(a) (1), Int.Rev.Code of 1954, which provides:

"§ *101.* **Certain death benefits**

"**(a) Proceeds of life insurance contracts payable by reason of death.**—

"*(1)* **General Rule.**—Except as otherwise provided in paragraph (2) and in subsection (d), gross income does not include amounts received (whether in a single sum or otherwise) under a life insurance contract, if such amounts are paid by reason of the death of the insured."

There is no question that the policy proceeds were paid "by reason of the death of the insured." The question is whether the policy is a life insurance contract.

The above quoted provisions of § 101(a) of the Internal Revenue Code of 1954 had their genesis in § II(B) of the Income Tax Act of 1913, ch. 16, 38 Stat. 114, 167. Such provisions have been in each succeeding Revenue Act or Code with modifications that have no relevance to this case.[3]

Although proceeds of "life insurance contracts" have been excluded from the gross income of certain beneficiaries since the Income Tax Act of 1913, Congress has never defined the term.[4]

---

1. The estate tax consequences of these transactions are set forth in 47 T.C. 310 at 311, 316.

2. See Revenue Ruling 65–57, 1965–1 Cum. Bull. 56.

3. *See* Revenue Act of 1916, ch. 463, § 4, 39 Stat. 756, 758; Revenue Act of 1917, ch. 63, § 1200, 40 Stat. 300, 329; Revenue Act of 1918, ch. 18, § 213(b) (1), 40 Stat. 1057, 1065; Revenue Act of 1921, ch. 136, § 213(b) (1), 42 Stat. 227, 238; Revenue Act of 1924, ch. 234, § 213(b) (1), 43 Stat. 253, 267; Revenue Act of 1926, ch. 27, § 213(b) (1), 44 Stat. 9, 24; Revenue Act of 1928, ch. 852, § 22(b) (1), 45 Stat. 791, 797; Revenue Act of 1932, ch. 209, § 22(b) (1), 47 Stat. 169, 178; Revenue Act of 1934, ch. 277, § 22(b) (1), 48 Stat. 680, 687; Revenue

Act of 1936, ch. 690, § 22(b) (1), 49 Stat. 1648, 1657; Revenue Act of 1938, ch. 289, § 22(b) (1), 52 Stat. 447, 458; Int.Rev.Code of 1939, ch. 2, § 22(b) (1), 53 Stat. 1, 10.

4. *See* 50 Cong.Rec. 508, 1257–59; H.R. Rep.No.767, 65th Cong., 2d Sess. 9 (1939–1 Cum.Bull. (Pt. 2) 86, 92); S.Rep.No. 617, 65th Cong. 3d Sess. 6 (1939–1 Cum. Bull. (Pt. 2) 117, 121); S.Rep.No.52, 69th Cong., 1st Sess. 20 (1939–1 Cum. Bull. (Pt. 2) 332, 347); H.R.Rep.No. 356, 69th Cong., 1st Sess. 33 (1939–1 Cum.Bull. (Pt. 2), 361, 363–64); H.R. Rep.No.704, 73rd Cong., 2d Sess. 21 (1939–1 Cum.Bull. (Pt. 2) 554, 569); S.Rep.No.558, 73d Cong., 2d Sess. 23 (1939–1 Cum.Bull. (Pt. 2) 586, 603); S. Rep.No.781, 82d Cong., 1st Sess. 50

It is well established that the incidence of taxation is governed by the substance rather than the form of the transaction. *E. g.*, Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945); Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Although the life policy was issued in a separate document for a separately stated consideration, it would not have been issued except in conjunction with the annuity contract. The substance of the transaction was the purchase of a combined life-annuity contract. In issuing the combined policy, the company assumed no insurance risk, but only an investment risk.

In Helvering v. Le Gierse, 312 U.S. 531, 541–542, 61 S.Ct. 646, 650, 85 L.Ed. 996 (1941), the Supreme Court said:

> "Considered together, the contracts wholly fail to spell out any element of insurance risk. It is true that the 'insurance' contract looks like an insurance policy, contains all the usual provisions of one, and could have been assigned or surrendered without the annuity. Certainly the mere presence of the customary provisions does not create risk, and the fact that the policy could have been assigned is immaterial since no matter who held the policy and the annuity, the two contracts, relating to the life of the one to whom they were originally issued, still counteracted each other. * * * The fact remains that annuity and insurance are opposites; in this combination the one neutralizes the risk customarily inherent in the other. From the company's viewpoint, insurance looks to longevity, annuity to transiency."

Taxpayers contend that since the life policy and annuity contract were considered by the parties as separate and were conveyed separately, they cannot be aggregated for income tax purposes, relying on Fidelity-Philadelphia Trust Co. v. Smith, 356 U.S. 274, 78 S.Ct. 730, 2 L. Ed.2d 765 (1958). *Fidelity-Philadelphia* involved the severability of the annuity contract from the life policy. The Court specifically found that the annuity payments would continue independent of the existence of the life policy. *Id.* at 280, 78 S.Ct. 730. In the instant case the purchase of the annuity contract was required for issuance of the life policy. There is no showing in the record that the trustees were authorized to obtain a refund on the annuity premium and yet retain the policy.

Since the combined policy reflecting the substance of the transaction carried *no insurance risk, we agree with the* District Court that the proceeds received by Mrs. Kess were not "amounts received * * * under a life insurance contract" within the meaning of Int. Rev.Code of 1954, § 101(a) (1).

Affirmed.

(1951–2 Cum.Bull. 458, 493); H.R.Rep. No.1337, 83d Cong., 2d Sess. A29–A32 (3 U.S.Code Cong. & Ad.News (1954) pp. 4017, 4166–68); S.Rep.No.1622, 83d Cong., 2d Sess. 14–15, 179–82 (3 U.S.Code Cong. & Ad.News (1954) 4621, 4643–45, 4814–16); H.R.Rep.No.2543, 83d Cong., 2d Sess. 23–24 (3 U.S.Code Cong. & Ad. News (1954) pp. 5280, 5283).