M. David **SALLER** and Sharon Saller, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

Civ. A. No. TY–86–235–CA.

United States District Court, E.D. Texas, Tyler Division.

June 10, 1988.

Rick K. Disney, Douglas, Kressler & Wuester, Ft. Worth, Tex., for plaintiffs.

Joseph A. Pitzinger, III, Atty., Tax Div. Dept. of Justice, Linda C. Groves, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

After the presentation of all evidence at the trial of the above-entitled and numbered civil action, the court directed a verdict for the defendant, under Fed.R.Civ.P. 50, on all but one of the issues. Rarely does the court grant a defendant's motion for directed verdict. Such motions are meritorious only when it clearly appears that no reasonable juror, viewing the evidence in the light most favorable to the nonmoving party, could render a verdict for the nonmoving-party. This case presented one of those rare situations.

In this controversy, the Sallers sued the defendant, for the recovery of certain back taxes, penalties, and interest thereon, that were collected from them for the year 1981. These assessments were made after the Internal Revenue Service rejected a 1981 interest deduction claimed by the Sallers regarding a promissory note, which was tied to the purchase of seven "time-share" units from Bay Share, Inc.

The Sallers acted through a partnership called Boyd & Saller, when they purchased the units. Their rights to these units vested on December 30, 1981. The total price of the units was $21,000.00 on the purchase date. The Boyd & Saller partnership gave Bay Share, Inc., a promissory note for $15,-750.00, plus twenty percent interest. The note was to be paid over a period of thirty years. According to the note's terms, interest was calculated by the Rule of 78. The final payment on the note, $550,696.02, was due in one "balloon" payment in the year 2010.

Boyd & Saller used an accrual method of tax accounting, and passed its tax liabilities and benefits on to the Sallers, who were its only partners. The note's resort to the Rule of 78, and the Sallers' use of an accrual method of tax accounting for their partnership, formed the basis of the Sallers' claimed 1981 interest deduction of $36,680.42 on their indebtedness to Bay Share.

The Commissioner of Internal Revenue disallowed the Rule of 78 accounting method, and rejected most of the claimed interest deduction. The government then levied an additional $26,377.34 in taxes and penalties, which the Sallers duly paid and which they later sought to recover in this case. The Sallers' principal claim was that the Commissioner abused his discretion when he disallowed their $36,680.42 deduction.

■ It appears from the evidence adduced at trial that the Sallers' declared interest deduction of $36,680.42 was manifestly unrealistic, and that no reasonable juror could have found otherwise. The $36,680.42 deduction represented two days' interest (December 30 and 31, 1981) on a debt principal of $15,750.00. As a matter of law, the Commissioner of Internal Revenue did not abuse his discretion when he disallowed the Sallers' tax accounting methods, under these circumstances. The

Commissioner retains the discretion so to act, and to substitute his own method of tax accounting, whenever a taxpayer's method does not reflect income with as much accuracy as standard accounting methods would permit. *See RCA Corporation v. United States*, 664 F.2d 881 (2d Cir.1981), *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982); *Wilkinson–Beane, Inc. v. Commissioner of Internal Revenue*, 420 F.2d 352 (1st Cir.1970); 26 U.S.C. § 446.

■ At most, the Sallers demonstrated only that the Rule of 78, which they had used to compute the amount of their interest deduction, is a "generally accepted" accounting method. But this showing was insufficient for the Sallers to meet their burden of proof concerning the abuse of discretion claim. Instead, they were required to show that the accounting method that they used was *both* "generally accepted" *and* a valid and accurate reflection of income in this particular case. *See Thor Power Tool Company v. Commissioner of Internal Revenue*, 439 U.S. 522, 538–44, 99 S.Ct. 773, 784–87, 58 L.Ed.2d 785 (1978); *see also St. James Sugar Cooperative v. United States*, 643 F.2d 1219, 1223 (5th Cir.1981). They have failed utterly to make the second showing.

Because the evidence shows beyond peradventure that the Sallers' accounting methods did not accurately reflect their income, it was unnecessary for the jury to decide whether the Rule of 78 can be denominated a "generally accepted" accounting method in this case. The court notes in passing, however, without deciding the issue, that the evidence seems to suggest that the Rule of 78 method of interest computation is appropriate only in situations involving short-term debt, not thirty-year obligations.

■ Furthermore, no reasonable juror, looking at the Sallers' evidence, and examining it with a view that is favorable—and even charitable—to them, could find that the promissory note represented a genuine debt that had economic reality. As a general rule, the substance of the commercial transaction, not merely its form, is determinative of questions of economic reality. *See Commissioner of Internal Revenue v.*

*Court Holding Company*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945). As discussed above, the Sallers executed the note on December 30, 1981. The debt's principal was $15,750.00. But the total amount due on the note for the last *two* days of 1981 was approximately $52,000.00, which is well over three times the principal. Thus, the purported debt was patently unrealistic. *See Estate of Franklin v. Commissioner of Internal Revenue*, 544 F.2d 1045 (9th Cir.1976).

■ Finally, under the accrual method of accounting, a deductible expense must meet the "all events" test before it can be claimed. In other words, the deductible sum must be fixed and unconditional. The promissory note in question was a non-recourse note, and it was not required that it be satisfied until 2010. It well might never have been paid off. Therefore, it was impossible for the plaintiffs to have shown that the "all events test" had been met in 1981.

Accordingly, no reasonable juror could have found for the plaintiffs, and the defendant's motion for a directed verdict properly was granted.